United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY BUCHANAN, | No. C 04-1130 CW |
| Plaintiff, | ORDER GRANTING DEFENDANTS' |
| v. | MOTIONS FOR SUMMARY JUDGMENT |
| COUNTY OF ALAMEDA, WAYNE TUCKER, individually and in his capacity as Chief Probation Officer for the County of Alameda, and TABULA RASA TREATMENT HOMES, INC., | |
| Defendants. | |
| _____/ | |

Defendant Tabula Rasa Treatment Homes, Inc., (Tabula Rasa) moves for summary judgment in its favor, or in the alternative for summary adjudication of the claims against it.  Plaintiff Jeffrey Buchanan opposes the motion.  Defendants County of Alameda (the County) and Wayne Tucker also move for summary judgment in their favor, or in the alternative for summary adjudication of the claims against them.  Plaintiff opposes the motion with respect to his claims against the County, but does not oppose dismissal of his claims against Defendant Tucker.

The matter was heard on July 8, 2005.  Having considered all of the papers filed by the parties and oral argument on the motions, the Court GRANTS Defendants' motions for summary judgment.

1

BACKGROUND

2      This case arises out of Plaintiff's attempted suicide while

3 he resided at a treatment facility for juvenile sex offenders

4 owned and operated by Tabula Rasa.  The facts are undisputed and

5 drawn from the contemporaneous records of the State court and

6 the Alameda County Probation Department, unless otherwise noted.

7

8      Plaintiff was born in 1985.  On October 10, 2001, he was

9 convicted of sexually molesting a step-sibling in violation of

10 California Penal Code § 288.5(a) and placed on probation.  At

11 that time, the Alameda County Juvenile Court determined that

12 Plaintiff's continued residence in his family home would be

13 contrary to his welfare, and he was adjudged a ward of the court

14 and committed to the care and custody of the Probation

15 Department.[1]  Upon consideration of the Probation Department's

16 report, including the clinical evaluation of a Psychiatric

17 Social Worker, the State court ordered as a probation condition

18 that Plaintiff be placed in a licensed residential sex offender

19 treatment program.  On December 11, 2001, Plaintiff was placed

20 in a Tabula Rasa group home, pursuant to a contract executed

21 between Tabula Rasa and the County for his treatment.  The State

22 court approved the placement.

23 _____

24      [1]The Court grants Defendant Tabula Rasa's request for
judicial notice of the Alameda County Superior Court's two
25 October 10, 2001 Orders placing Plaintiff under the care of the
Probation Department and setting forth the terms and conditions
26 of Plaintiff's probation, as well as the Superior Court's
September 13, 2002 Ex Parte Order allowing Plaintiff to take
27 Paxil.

28

2

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

Tabula Rasa is a private, non-profit organization licensed by the State of California's Department of Social Services. Mandery Decl. ¶ 2.  It accepts juvenile sex offenders from the County and other counties in Northern California.  <u>Id.</u> ¶ 4.  It does not provide treatment for all of the County's juvenile sex offenders and may reject any applicant; an individual's acceptance into the program is "contingent upon a thorough review of the documents provided by the County concerning the minor as well as an interview to determine whether they are suitable for placement into the program." <u>Id.</u> ¶ 3.  According to Michael Cholerton, Director of Juvenile Services for the Probation Department at the time of Plaintiff's placement, Tabula Rasa enjoyed a good reputation and a long-term relationship with the Probation Department.  Cholerton Decl. ¶ 15.

The Probation Department supervises and monitors the children it sends to Tabula Rasa.  However, the Probation Department does not provide input or recommendations regarding the day-to-day operation of the group home, nor does it have any control over treatment plans or therapy.  Mandery Decl. ¶ 6.

Beginning in December, 2001, Plaintiff's treatment was supervised by Tabula Rasa employee Kathy Steenberg, a licensed clinical social worker, and included at least one individual and one group therapy session per week.  Deputy Probation Officer Heather Rogers became Plaintiff's probation officer in March, 2002, at which point she became aware of his suicidal tendencies.  Rogers Decl. ¶ 8.  However, she did not at that

3

**United States District Court**
For the Northern District of California

time raise the issue with her supervisors or anyone at the Probation Department, assuming that Tabula Rasa was dealing with the issue by "making sure he went to his medical appointments, his psychiatric appointments, by communicating."  Rogers Dep. 29:10-21.  Every month, Officer Rogers met with Plaintiff and visited with Tabula Rasa staff.  See Rogers Decl., Ex. 2, Monthly Visit Documentation Forms, March 20, April 25, May 22, June 29, July 18, August 29, September 16, October 29, November 21 and December 19, 2002; January 23, February 27, March 31 and April 30, 2003.  She also reviewed Tabula Rasa's initial report and subsequent quarterly reports concerning Plaintiff's condition, treatment, needs and goals.  Id., Ex. 1, January 25, 2002, Appraisal/Needs and Services Plan; Ex. 3, Quarterly Reports, June 18, 2002, November 11, 2002, and March 4, 2003.[2] According to Michelle Mandery, executive director of Tabula Rasa, the group home also uses a daily log to track medications administered, but this daily log is not saved, and Plaintiff's has been destroyed.  Davis Decl. Ex. A, Mandery Dep. 44-46.

In her June 18, 2002 report, Ms. Steenberg recommended that Plaintiff be evaluated for depression, based in part on his own self-reporting of chronic and episodic depression, including weight loss, suicidal ideation, and social impairment.  Id., Ex. 3, at D-88.  Based on Ms. Steenberg's recommendation, Officer

---

[2]Plaintiff objects to the Appraisal, Needs and Services Plan and the Quarterly Reports on the grounds of hearsay. Plaintiff's objections are overruled as moot; the Court does not rely on these documents for truths about Plaintiff's condition, but as evidence of Officer Rogers' record-keeping and the parties' understanding at the time.

Rogers obtained a referral for Plaintiff be evaluated by a psychiatrist.  However, Officer Rogers testified at her deposition that she would have referred Plaintiff to a psychiatrist, even if the Tabula Rasa staff had not recommended that she do so, because she is "not an expert when it comes to mental health issues."  Rogers Dep. 26:4-12.

Dr. Sukhmani Kaur Gill, a psychiatrist at Pathways to Wellness, a clinic with a contract with the County, examined Plaintiff in August, 2002 and diagnosed him with major depressive disorder, dysthymic disorder and anxiety disorder. She prescribed the anti-depressant drug Paxil.[3]  This medication was not approved for pediatric use.  On September 13, 2002, the Alameda County Juvenile court granted an <u>ex parte</u> request by Officer Rogers to allow Plaintiff to take Paxil in dosages of up to 40 milligrams.  Officer Rogers was aware that Paxil was not approved for pediatric use, but was not concerned because she knew that not every medication taken by children had been tested and approved for them, and she deferred to the judgment of the treating psychiatrist.  Rogers Dep. 37:6-20, 39:1-15.  According to Officer Rogers' request to the court, Plaintiff's last attorney of record was not contacted because she no longer handled juvenile matters, but Plaintiff's mother, Cynthia Ramirez, "was most definitely in agreement with the

---

[3]Plaintiff filed his complaint against Dr. Gill as well. However, he did not oppose Dr. Gill's motion to dismiss the claims against her for failure to state a claim and lack of subject matter jurisdiction.  The Court granted that motion on February 2, 2005.

United States District Court
For the Northern District of California

prescription," had "noticed that his behavior was extremely
manic," and was "fearful that he would commit suicide."  Ms.
Ramirez now states that had she been informed that Paxil was not
recommended for pediatric use, she would not have supported the
ex parte request, and would have taken efforts to have an
attorney appointed for her son.  Ramirez Decl. ¶¶ 2-3.

On October 7, 2002, Dr. Gill or another psychiatrist at
Pathways to Wellness reissued Plaintiff a prescription for Paxil
in 10 milligram dosages.  On November 1, 2002, the dosage was
increased to 20 milligrams, a prescription which was reissued
following evaluations performed on December 6, 2002, January 10,
2003 and February 6, 2003.  Ms. Steenberg's November 11, 2002
report noted,

> Monitoring and follow-up appointments will occur to ensure
> the medications [sic] effectiveness.  Also long-term
> psychoanalytic therapy is concurrently the treatment
> modality for his depressive symptoms. . . .
> Over the last three weeks, Jeff's highs (manic
> symptoms) and lows (depressive symptoms) appear to be less
> intrusive.  His affect appears to be more age appropriate
> and his social timing less intrusive and less
> inappropriate.  These recent changes can presumably be
> attributed to the psychotropic medication.

Nov. 11, 2002 Report at D-83, D-85.

On February 18, 2003, Plaintiff disclosed to Ms. Steenberg
that he had devised a method for attempting suicide.  As part of
her response, Plaintiff and Tabula Rasa staff wrote a "no-
suicide plan" in which he committed "to not harm himself and to
immediately inform any staff on duty whenever he ha[d] such
thoughts."  Rogers Decl., Ex. 8, February 18, 2003 Tabula Rasa
Incident Report.  Tabula Rasa expert witness Dr. James R.

United States District Court

For the Northern District of California

Missett describes a no-suicide plan or contract as "a therapy tool widely used in the psychiatric community to enlist the assistance of the patient into the treatment protocol."  Missett Decl. ¶ 10.  Plaintiff was reportedly placed on "one-on-one supervision."  Incident Report at D-76.

Officer Rogers was informed of Plaintiff's suicidal ideation and the no-suicide plan.  She testified that this was something that should have been brought to the attention of her supervisors; however, she does not recall having any conversations with anyone at her office about the incident report.  Rogers Dep. 55:13-18.

In her March 3, 2003 report, Ms. Steenberg noted that Plaintiff's depressive and manic symptoms had increased that quarter; she attributed this to an "increased sensitivity to rejection and self-loathing" due to his disclosure in therapy of his own past sexual abuse.  Mar. 3, 2003 Quarterly Report at D-72.  Also on March 3, 2003, Plaintiff's prescription dosage was increased to 30 milligrams and remained elevated after an April 10, 2003 evaluation.  In addition to the medication, Tabula Rasa placed Plaintiff

> on a special program to elevate his depressed mood.  He is to do physical activity two times a day along with using positive self-talk to combat his defeatist and self-loathing attitudes.  He is also to talk to staff immediately when he is feeling depressed or having suicidal thoughts.  He is on close supervision to further maintain his safety.

Mar. 3, 2003 Quarterly Report at D-73.

On the evening of May 7, 2003, Plaintiff was in his room, "crying, upset and depressed."  Buchanan Dep. 80:5-6.  His

7

United States District Court

For the Northern District of California

1   roommate found him and informed Anthony Page, a Tabula Rasa

2   employee.  Plaintiff informed Mr. Page that he wanted to kill

3   himself; Mr. Page successfully got Plaintiff to calm down "a

4   little bit," and then told him to go back to bed.  Id. 82:1-11.

5        The next day, Plaintiff was woken up by Tabula Rasa staff

6   between 6:30 and 7:00, ate breakfast, and left for his

7   continuation school.  Although Plaintiff was seen at school, he

8   did not go to class, and instead walked into an oncoming traffic

9   lane of United States Highway 50.  Plaintiff was struck by a

10  vehicle and sustained significant bodily injuries.  Tabula Rasa

11  executive Michelle Mandrey informed Officer Rogers of

12  Plaintiff's suicide attempt that day.  Tabula Rasa employees

13  later discovered multiple suicide notes written by Plaintiff.

14       Tabula Rasa's expert, Dr. Missett, has reviewed the

15  relevant documents in this case.  He opines that the County's

16  placement of Plaintiff at Tabula Rasa was appropriate; that

17  Tabula Rasa's provision of Paxil to Plaintiff was in accordance

18  with the recommendation of his treating psychiatrists and the

19  State court's order and within the applicable standard of care;

20  that Tabula Rasa staff at all times provided Plaintiff with the

21  care and treatment that was reasonable and appropriate and

22  within the applicable standard of care for a group home; and

23  that no act or omission by Tabula Rasa staff was a substantial

24  factor in causing Plaintiff's injuries.[4]  ¶¶ 5, 9, 13-17.

25  _____

26       [4]Plaintiff objects to Dr. Missett's Declaration on the
    grounds that he failed to review Plaintiff's psychiatric
    records; he relies on hearsay comments contained within Ms.
27  Steenberg's Quarterly Reports; and his opinion relies on an

28                              8

**United States District Court**
For the Northern District of California

1    In its December 6, 2004 Order Granting in Part and Denying

2  in Part Defendant Tabula Rasa's Motion to Dismiss, the Court

3  dismissed Plaintiff's claim for negligence against Tabula Rasa

4  on the grounds that it was immune from liability under

5  California Government Code § 845.8.  Plaintiff pursues claims

6  against Tabula Rasa under 42 U.S.C. § 1983 for violation of his

7  constitutional rights, including violation of his right to

8  personal security under the Fifth Amendment; deliberate

9  indifference to his medical needs in violation of the Eight

10 Amendment; and failure to provide medical care in violation of

11 the Fourteenth Amendment.  Plaintiff also brings a State law

12 claim for battery against Tabula Rasa.  In addition, Plaintiff

13 brings a claim against the County for the maintenance of

14 policies or customs exhibiting a deliberate indifference to the

15 constitutional rights of a person with whom it had a special

16 relationship.  Plaintiff has dismissed his previous claims

17 against Dr. Gill, and does not oppose dismissal of his claims

18 against Mr. Tucker.

19                            LEGAL STANDARD

20    Summary judgment is properly granted when no genuine and

21 ────────────────────────

22 "incomplete (and possibly erroneous) set of facts."
      Plaintiff's objections are overruled.  Dr. Missett clearly
23 states that he reviewed Plaintiff's "medical records" and "all
   documents produced by Plaintiff," and in a supplemental
24 declaration he states that, assuming all of the additional facts
   identified by Plaintiff are true, his opinions would remain the
25 same.  Under Federal Rule of Evidence 703, Dr. Missett may rely
   for his opinion on otherwise inadmissible facts or data.
26 Plaintiff makes no claim that Ms. Steenberg's Quarterly Reports
   are not of the type reasonably relied upon by experts in the
27 field, nor does Plaintiff suggest that Ms. Steenberg's Reports
   would not generally be admissible if properly authenticated.

28                                  9

disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law.  Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).

The moving party bears the burden of showing that there is no material factual dispute.  Therefore, the court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material.  Celotex, 477 U.S. at 324; Eisenberg, 815 F.2d at 1289.  The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).

Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case.  The substantive law will identify which facts are material.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Where the moving party does not bear the burden of proof on an issue at trial, the moving party may discharge its burden of showing that no genuine issue of material fact remains by demonstrating that "there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325.  The moving party is not required to produce evidence showing the absence of a material fact on such issues, nor must the moving

party support its motion with evidence negating the non-moving party's claim. <u>Id.</u>; <u>see also</u> <u>Lujan v. Nat'l Wildlife Fed'n</u>, 497 U.S. 871, 885 (1990); <u>Bhan v. NME Hosps., Inc.</u>, 929 F.2d 1404, 1409 (9th Cir. 1991), <u>cert. denied</u>, 502 U.S. 994 (1991).  If the moving party shows an absence of evidence to support the non-moving party's case, the burden then shifts to the opposing party to produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." <u>Bhan</u>, 929 F.2d at 1409.  A complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. <u>Celotex</u>, 477 U.S. at 323.

DISCUSSION

I.  Constitutional Claims Against Tabula Rasa

Tabula Rasa moves for summary adjudication of Plaintiff's constitutional claims against it on the grounds <u>inter alia</u> that there is an absence of evidence to support Plaintiff's contention Tabula Rasa acted with deliberate indifference.

Both parties agree that the standard of "deliberate indifference" applies to all of Plaintiff's constitutional claims under 42 U.S.C. § 1983. <u>See, e.g.</u>, <u>Daniels v. Williams</u>, 474 U.S. 327, 330 (1986) (holding that due process clause not implicated by negligent State act causing unintended loss of life).

It is not clear what Plaintiff believes constitutes evidence of Tabula Rasa's deliberate indifference to him.  In his opposition, Plaintiff suggests that the issue is "whether it knew of Plaintiff's suicidal tendencies." Am. Opp. at 14.  The

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

record clearly shows that Tabula Rasa staff were indeed aware of Plaintiff's suicidal tendencies, and that they took what they believed to be appropriate steps in response.  As part of that response, they administered to Plaintiff the medication that was prescribed by his treating psychiatrists, who evaluated him monthly.  This medication was also approved by the State court. Plaintiff has failed to produce evidence sufficient to raise a triable issue of material fact regarding Tabula Rasa's deliberate indifference to him.  Indeed, Plaintiff has failed to rebut Dr. Missett's expert opinion that Tabula Rasa was not negligent.

    Plaintiff accuses Tabula Rasa of deliberate spoliation of the evidence, based on its failure to keep Plaintiff's daily medication logs.  Plaintiff claims that this creates an adverse inference that Tabula Rasa was in fact deliberately indifferent to his medical needs.  As the Ninth Circuit explained in Akiona v. United States, courts may draw adverse inferences from the destruction of evidence relevant to a case,

> based on two rationales, one evidentiary and one not.  The evidentiary rationale is nothing more than the common sense observation that a party who has notice that a document is relevant to litigation and who proceeds to destroy the document is more likely to have been threatened by the document than is a party in the same position who does not destroy the document. . . .
>     The other rationale for the inference has to do with its prophylactic and punitive effects. Allowing the trier of fact to draw the inference presumably deters parties from destroying relevant evidence before it can be introduced at trial.

938 F.2d 158, 161 (1991).  Here, however, these rationales are inapplicable and insufficient.  Nothing in the record shows that

12

**United States District Court**
For the Northern District of California

Tabula Rasa destroyed Plaintiff's records in response to this litigation.  Furthermore, Plaintiff's primary theory is that Tabula Rasa's administration of Paxil caused him harm.  The Court will infer, in the absence of the daily medical logs, that Tabula Rasa did indeed administer Paxil to Plaintiff, but this fact, in itself, does not constitute evidence of deliberate indifference.

Therefore, the Court grants Tabula Rasa's motion for summary adjudication of Plaintiff's federal constitutional claims against it.  It need not reach Tabula Rasa's arguments that these claims are prohibited because it is not a State actor, or, in the alternative, that the claims are prohibited under <u>Monell v. Dep't of Soc. Serv.</u>, 43 U.S. 658, 694 (1978) and that Tabula Rasa is entitled to qualified immunity.

II.  Battery Claim

Tabula Rasa moves for summary adjudication of Plaintiff's State law claim against it for battery, on the grounds that it is unsupported by the evidence.  Title 28 U.S.C. § 1367(c)(3) authorizes a federal district court to exercise supplemental jurisdiction over State law claims even after it has dismissed all claims over which it has original jurisdiction.

In order to establish this claim, Plaintiff must show evidence sufficient to raise a triable issue of material fact regarding the elements of battery.  A California Court of Appeal set forth those elements in the context of medical treatment as follows,

A battery is any intentional, unlawful and harmful contact

13

United States District Court

For the Northern District of California

1

2

3

4

5
    by one person with the person of another.  A harmful
contact, intentionally done is the essence of a battery.  A
contact is "unlawful" if it is unconsented to.  The
elements of a civil battery are:  1. Defendant
intentionally did an act which resulted in a harmful or
offensive contact with the plaintiff's person; 2. Plaintiff
did not consent to the contact; and 3. The harmful or
offensive contact caused injury, damage, loss or harm to
the plaintiff.

6

7
<u>Piedra v. Dugan</u>, 123 Cal. App. 4th 1483, 1495 (2004) (internal
quotation marks, ellipses and citations omitted).

8

9

10

11

12

13

14

15

16

17
    In <u>Piedra</u>, which also involved allegedly harmful medical
treatment to a minor, it was the parents' consent to treatment
that was in dispute.  For wards of the court, however,
California law provides that "only a juvenile court judicial
officer shall have authority to make orders regarding the
administration of psychotropic medications for that child."
Cal. Welf. & Inst. Code § 369.5(a).  Tabula Rasa argues that the
administration of Paxil to Plaintiff was not "unlawful" because
it was duly authorized by the Alameda County Superior Court's
September 13, 2002 Order.

18

19

20

21

22

23

24

25

26

27
    Plaintiff counters that the order is void because, as
stated on its face, it was issued <u>ex parte</u> without contacting an
attorney for Plaintiff.  Yet Plaintiff cites no legal authority
that supports this position.  Indeed, § 369.5(a) requires only
that an order regarding administration of psychotropic
medication be based on "a request from a physician, indicating
the reasons for the request, a description of the child's
diagnosis and behavior, the expected results of the medication,
and a description of any side effects of the medication."
Plaintiff does not dispute that these requirements were met.

28

14

The legal authority cited by Plaintiff is inapposite and does not suggest that the order was invalid simply because it was issued ex parte.  See Becker v. S.P.V. Construction, 27 Cal. 3d 489, 493-496 (1980) (reversing a trial court order vacating default judgment in construction contract case); Burtnett v. King, 33 Cal. 2d 805, 807-808 (1949) (setting forth California law requirements for default judgment).  There is no evidence that Tabula Rasa was aware that the order had been issued without contacting a lawyer, or that that was improper, if it was.

In light of the State court order authorizing the administration of Paxil in dosages of up to 40 milligrams, Tabula Rasa's dispensation of the medicine to Plaintiff cannot be the kind of "intentional, unlawful and harmful contact" that constitutes battery.  Therefore, the Court grants Tabula Rasa's motion for summary adjudication of the battery claim.

III.  Monell Claim Against County

The County moves for summary adjudication of Plaintiff's claim, pursuant to Monell, that it violated 42 U.S.C. § 1983 by developing and maintaining policies or customs exhibiting a deliberate indifference to the constitutional rights of persons with whom it had a special relationship, including Plaintiff.

"To impose liability on a government entity for failing to ad preserve constitutional rights, a section 1983 plaintiff must establish: (1) that he possessed a constitutional right of which h deprived; (2) that the municipality had a policy; (3) that this po 'amounts to deliberate indifference' to the plaintiff's constituti

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

right; and (4) that the policy is the 'moving force behind the

constitutional violation.'" <u>Oviatt v. Pearce</u>, 954 F.2d 1470, 1474

Cir. 1992) (citing <u>City of Canton</u>, 489 U.S. 378, 389-91 (1989)).

the liability of municipalities does not depend upon the liability

individual officers, it is contingent on a violation of constituti

rights. <u>Scott v. Henrich</u>, 39 F.3d 912, 916 (9th Cir. 1994), <u>cert.</u>

<u>denied</u>, 515 U.S. 1159 (1995). At the hearing, Plaintiff identifie

Officer Rogers as the individual who violated his constitutional

rights.

Plaintiff identifies as "the crux" of his claim against the C

an alleged violation of his rights under the Eighth Amendment beca

he was "confined under conditions posing a risk of 'objectively,

sufficiently serious' harm and that the officials had a 'sufficien

culpable state of mind' in denying the proper medical care." <u>Clem</u>

<u>v. Gomez</u>, 298 F.3d 898, 904 (9th Cir. 2002) (quoting <u>Wallis v. Bal</u>

70 F.3d 1074, 1076 (9th Cir. 1995)). However, Plaintiff does not

specifically identify any evidence showing that he was confined un

conditions posing a risk of objectively, sufficiently serious harm

Even assuming <u>arquendo</u> that the Paxil prescription was a "conditio

posing a risk of such harm, Plaintiff offers no evidence to sugges

that Officer Rogers or any other County employee had a "sufficient

culpable state of mind" in creating this condition.

Plaintiff notes numerous alleged discrepancies or gaps in

the record which he implies indicate deficiencies in Officer

Rogers' supervision, e.g., her failure to recall whether she

brought the February 18, 2003 incident report to the attention

of her Probation Department supervisors. However, Plaintiff

1   never explains how these alleged deficiencies support his claim

2   that the County confined him under conditions of sufficiently

3   serious harm or that doing so amounted to deliberate

4   indifference to his rights.  The record before the Court shows onl

5   that Officer Rogers relied on Tabula Rasa and Plaintiff's treating

6   psychiatrists in order to determine what course of treatment was i

7   best interest.  Despite Plaintiff's suffering, there is no

8   evidence that Officer Rogers' trust was misplaced or

9   inappropriate, much less that it represented a policy of

10  deliberate indifference to Plaintiff's constitutional rights.

11      Therefore, the Court grants the County's motion for summary

12  adjudication of the Monell claim against it.

13                          CONCLUSION

14      For the foregoing reasons, the Court GRANTS Defendants

15  Tabula Rasa and the County's motions for summary judgment

16  (Docket Nos. 71 and 60, respectively).  Tabula Rasa's request

17  for judicial notice is GRANTED (Docket No. 73).  Plaintiff's

18  claims against Wayne Tucker are dismissed with prejudice.

19      The Clerk shall enter judgment accordingly.  Each party

20  shall bear its own costs of the action.

21

22      IT IS SO ORDERED.

23

24  Dated: 7/21/05                    /s/ CLAUDIA WILKEN
                                      CLAUDIA WILKEN
25                                    United States District Judge

26

27

28                               17